John & Michelina DAMICO,
d/b/a Moulded Acoustical
Products, Petitioner,

v.

DEPARTMENT OF LOCAL GOVERN-
MENT FINANCE,[1] Respondent.

No. 49T10–9701–TA–59.

Tax Court of Indiana.

June 3, 2002.

---

**1.** The State Board of Tax Commissioners (State Board) was originally the Respondent in this appeal. However, the Legislature abolished the State Board as of December 31, 2001. Pub.L. No. 198–2001, § 119(b)(2). Effective January 1, 2002, the Legislature created the Department of Local Government Finance (DLGF), and the Indiana Board of Tax Review (Indiana Board). IND.CODE §§ 6–1.1–30–1.1; 6–1.5–1–3 (West Supp.2001); Pub.L. No. 198–2001, §§ 66, 95. Pursuant to Indiana Code § 6–1.5–5–8, the DLGF is sub-stituted for the State Board in appeals from final determinations of the State Board that were issued before January 1, 2002. IND.CODE § 6–1.5–5–8 (West Supp.2001) (eff. 2002); Pub.L. No. 198–2001, § 95. Nevertheless, the law in effect prior to January 1, 2002 applies to these appeals. I.C. § 6–1.5–5–8. *See also* Pub.L. No. 198–2001, § 117. Although the DLGF has been substituted as the Respondent, this Court will still reference the State Board throughout this opinion.

David L. Pippen, Attorney at Law, Indianapolis, IN, Attorney for Petitioners.

Steve Carter, Attorney General of Indiana, Joel Schiff, Deputy Attorney General, Indianapolis, IN, Attorneys for the Respondent.

FISHER, J.

John and Michelina Damico, d/b/a Moulded Acoustical Products (Moulded), appeal the final determinations of the State Board of Tax Commissioners (State Board) that assessed Moulded's improvement for the 1990–94 tax years. The issues before the Court are:

I. Whether the State Board should have applied the thirty-year physical depreciation table to Moulded's improvement for the 1990 tax year;

II. Whether the assessment of Moulded's improvement for the 1990–93 tax years should have been reduced because it was assessed for a central heating system that it does not have;

III. Whether Moulded's improvement should have been assessed with one perimeter to area ratio for the 1990–93 tax years; and

IV. Whether the assessment of Moulded's improvement for the 1994 tax year should have included a kit building adjustment or should have been reduced because its

partitioning, walls, and interior finish were assessed excessively.[2]

For the reasons stated below, the Court REVERSES and REMANDS issues I and III for further consideration, but AFFIRMS the State Board's final determination of issues II and IV.

## FACTS AND PROCEDURAL HISTORY

Moulded owns a light, pre-engineered manufacturing building with a 1,080 square-foot attached wood-frame office in Elkhart County, Indiana. The light manufacturing area of the improvement has a number of gas heating units suspended from the ceiling.[3] Although the office is attached to the manufacturing building,[4] it has a separate use from the manufacturing building. For the 1990–94 tax years, the light manufacturing area of Moulded's improvement was assessed using the General Commercial Industrial (GCI) Light Manufacturing model; it was also assessed for central heating rather than for the suspended gas heaters. During those same tax years, the office area of the improvement was assessed using the GCI Office model. Moulded's improvement also was assessed using two perimeter-to-area ra-

tios (PAR). For the 1990 tax year, Moulded's improvement was depreciated from the forty-year physical depreciation table.

On March 30, 1994, Moulded filed four Form 133 Petitions for Correction of Errors (133 Petition) with the Elkhart County Board of Review (BOR) for the 1990–93 tax years.[5] In its 133 Petition for the 1990 tax year, Moulded argued that only one PAR should have been calculated for the entire improvement and that the improvement should have been depreciated from the thirty-year physical depreciation table. In its 133 Petitions for the 1991–93 tax years, Moulded argued that (1) only one PAR should have been calculated for the entire improvement, (2) it had been assessed for partitioning that it did not have, and (3) it had been assessed for a central heating system rather than its suspended gas heaters. Pursuant to Moulded's 133 Petition for the 1990 tax year, the BOR raised Moulded's assessment.[6] The BOR made no changes to Moulded's assessment for the 1991–93 tax years.

On March 30, 1994, Moulded also filed a Form 130 Petition for Review of Assessment (130 Petition) with the BOR for the 1994 tax year in which it challenged its PAR and its assessment for partitioning.[7]

---

**2.** Moulded further contends that its assessment is erroneous because the State Board's rules for determining grade and condition lack ascertainable standards. A taxpayer cannot satisfy its burden by coming to this Court and simply noting inadequacies in the pre–2002 system. *See Phelps Dodge v. State Bd. of Tax Comm'rs*, 705 N.E.2d 1099, 1104 (Ind. Tax Ct.1999), *review denied*. "Instead, a taxpayer must offer probative evidence relating to the error that the taxpayer has raised." *Id.* Moulded did not offer probative evidence of grade and condition. Consequently, the Court will not address Moulded's grade and condition arguments.

**3.** The record does not reveal the exact number.

**4.** The record does not reflect whether the office building and manufacturing building

are separated by a wall, or whether the office building opens into the manufacturing building.

**5.** The Cleveland Township Assessor assessed Moulded's improvement as follows: for 1990, $293,770; and for 1991–93, $181,830. Moulded argued that the amounts should have been as follows: for 1990, $195,560; and for 1991–93, $125,700.

**6.** The record does not reveal the specific reason why the BOR raised Moulded's assessment for that year.

**7.** For the 1994 tax year, the Cleveland Township Assessor assessed Moulded's improvement at $181,830.

The BOR rejected Moulded's arguments and raised the assessment of Moulded's improvement to $238,170 for the 1994 tax year.

Moulded appealed the BOR's denial of its 130 Petition for the 1994 tax year by filing a Form 131 Petition for Review of Assessment (131 Petition) with the State Board. Moulded argued that the light manufacturing area of its improvement should have been given a kit building adjustment and should have received a discount for its partitioning, finish, and walls, which would have lowered the assessment of Moulded's improvement to $175,870. On November 22, 1996, the State Board issued a final determination of Moulded's 131 Petition, lowering the assessment of its improvement to $185,770. The State Board declined, however, to give Moulded's improvement a kit building adjustment or a discount for its partitioning, finish, and walls.

Moulded also appealed the denial of its 133 Petitions to the State Board. On December 13, 1996, the State Board issued its final determination of Moulded's 133 Petitions, assessing Moulded's improvement as follows: $277,570 for the 1990 tax year, and $157,230 for the 1991–93 tax years. For the 1990 tax year, the State Board refused to apply a kit adjustment or to assess the improvement's light manufacturing area using the thirty-year physical depreciation table. For the 1990–93 tax years, the State Board refused to decrease the assessment of the improvement's heaters or assess Moulded's improvement with a single PAR.

Moulded initiated an original tax appeal on January 6, 1997. A trial was held on January 26, 1998. The parties presented oral arguments on September 15, 1998. Additional facts will be provided when necessary.

## ANALYSIS AND OPINION

### Standard of Review

 · This Court gives great deference to the final determinations of the State Board when it acts within the scope of its authority. *Thousand .Trails, Inc. v. State Bd. of Tax Comm'rs*, 757 N.E.2d 1072, 1075 (Ind. Tax Ct.2001). This Court will reverse a final determination of the State Board only when its findings are unsupported. by substantial evidence, arbitrary, capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.*

 Furthermore, a taxpayer who appeals to this Court from a State Board final determination bears the burden of showing that the final determination was invalid. *Id.* The taxpayer must present a prima facie case by submitting probative evidence, i.e., evidence sufficient to establish a given fact that, if not contradicted, will remain sufficient. *Id.* Once the taxpayer presents a prima facie case, the burden shifts to the State Board to rebut the taxpayer's evidence and support its findings with substantial evidence. *Id.*

### Discussion

#### I. Thirty-year Physical Depreciation Table

 The first issue is whether the State Board arbitrarily and capriciously refused to apply the thirty-year physical depreciation table to Moulded's light, pre-engineered manufacturing building for the 1990 tax year. Moulded argues that the State Board's rules provided for the application of the thirty-year physical depreciation table to light pre-engineered buildings for 1990. The State Board does not dispute that Moulded's improvement was a light pre-engineered building for the 1990 tax year.[8] Rather, it contends that in

8. The State Board assessed the manufactur- ing area of Moulded's improvement with the

1990, its rules did not provide for the classification of an improvement as "light pre-engineered." Instead, the State Board argues that it appropriately classified Moulded's improvement as a "fire-resistant building not listed elsewhere," which required it to be depreciated from the forty-year physical depreciation table in 1990.

The physical depreciation tables (also known as the "economic life" tables or "life expectancy" tables) adjust the reproduction cost of a structure to account for its age and condition. *See* IND. ADMIN. CODE tit. 50, r. 2.1–5–1 (1992) (applying depreciation). For the March 1, 1990 assessment date at issue here, the State Board's rules plainly provided for the application of the thirty-year physical depreciation table to depreciate "light pre-engineered buildings" such as Moulded's. *See id.* Thus, the State Board's claim that the thirty-year physical depreciation table provided no classification for light pre-engineered buildings in 1990 simply is incorrect. Moreover, the State Board's rules did not provide for the application of the forty-year economic life table to light pre-engineered buildings in 1990. *Id.* Because the State Board is required to use the rules in effect on the original assessment date of the property under review, it acted arbitrarily and capriciously when it refused to depreciate Moulded's light pre-engineered manufacturing building from the thirty-year physical depreciation table for the 1990 tax year.[9] *See* IND.CODE § 6–1.1–15–14 (1998) (providing that "[i]n any assessment review the assessing official shall [ ] use the state board of tax commissioner's rules in effect ... on the original assessment date of the property under review"); *Castello v. State Bd. of Tax Comm'rs,* 638 N.E.2d 1362, 1364 (Ind. Tax Ct.1994) (noting that the State Board's rules have the force of law and that assessors must comply with those rules). The Court therefore REVERSES the State Board's final determination of this issue and REMANDS it to the Indiana Board with instructions to apply the thirty-year economic life table to Moulded's light manufacturing building for the 1990 tax year.[10]

## II. Heaters

■■■ The second issue is whether the assessment of Moulded's improvement should be reduced for the 1990–93 tax years because it had suspended gas heaters but instead was assessed for a central heating system. The State Board contends that Moulded improperly brought its claims in the 133 Petitions because subjective judgment would be required to assess

---

GCI Light Manufacturing model, which, for the 1990 tax year, was used to assess pre-engineered structures such as Moulded's. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–7(b) (1992) (detailing the GCI Light Manufacturing model).

9. The Court finds no merit in the State Board's argument that subjective judgment would be required to depreciate Moulded's improvement from the thirty-year physical depreciation table. Under the State Board's rules, an assessor *"must* identify the correct [physical depreciation] table" to be applied to an improvement. IND. ADMIN. CODE tit. 50, r. 2.1–5–1 (1992) (emphasis added). The only physical depreciation table that lists "light pre-engineered buildings" is the thirty-year

table. *Id.* Thus, once the State Board determined that Moulded's improvement was a light pre-engineered building for the 1990 tax year, no choice remained but to apply the thirty-year table. Because the assessor had no choice but to apply the thirty-year table once Moulded's improvement had been classified, no subjective judgment was required.

10. All cases that would have previously been remanded to the State Board are now remanded to the Indiana Board. IND. CODE § 6–1.1–15–8. Final determinations made by the Indiana Board are subject to review by this Court pursuant to Indiana Code § 6–1.1–15. IND. CODE §§ 6–1.5–5–7; 33–3–5–2(a)(2).

Moulded's heaters. Specifically, the State Board asserts that its cost schedules do not list a cost for the type of heaters in Moulded's improvement. Therefore, the State Board concludes that to estimate any cost differential between Moulded's heaters and the central heating system described in the model would require an assessor's subjective judgment, which is not permitted in a 133 Petition.

■■■■ Improvements in Indiana are assessed using generally descriptive models. *See* IND. ADMIN. CODE tit. 50, r. 2.1-4-7 (1992) (providing model descriptions). An assessor locates the model that best matches an improvement then finds the appropriate cost schedule, which shows the costs of various components and features associated with that model. IND. ADMIN. CODE tit. 50, rr. 2.1-4-3(a); 2.1-4-4; 2.1-4-5 (1992). When an assessor makes an error that "can be corrected without resort to subjective judgment and according to objective standards," then a taxpayer may file a 133 Petition to correct the error. *Hatcher v. State Bd. of Tax Comm'rs*, 561 N.E.2d 852, 857 (Ind. Tax Ct.1990). Therefore, a taxpayer who files a Form 133 must: (1) show that the alleged error is objective and (2) quantify the error by using the State Board's schedules. *Barth, Inc. v. State Bd. of Tax Comm'rs*, 756 N.E.2d 1124, 1128-29 (Ind. Tax Ct.2001); *Rinker Boat Co. v. State Bd. of Tax Comm'rs*, 722 N.E.2d 919, 922 (Ind. Tax Ct.1999).

■■■ Accordingly, the burden was on Moulded to (1) show that the assessment of its improvement for a central heating system was an objective error and (2) use the State Board's cost schedules to quantify the differential cost between its suspended heaters and the GCI Light Manufacturing model central heating system. Moulded is correct that the assessment of its improvement for a central heating system was an objective error; an assessor need only look at Moulded's suspended gas heaters to determine that they are not a central heating system. *See Rinker Boat*, 722 N.E.2d at 922 (stating that the determination of an objective error "involves a simple observation of fact without resort to subjective judgment"). However, Moulded did not make any attempt to quantify the cost differential between its heaters and the GCI model heating system by using the State Board's cost schedules. Because Moulded did not quantify the cost differential between the heating systems, it did not make a prima facie case. The Court therefore AFFIRMS the final determination of the State Board as to this issue.[11]

### III. PAR

■■■ The third issue is whether the State Board acted arbitrarily and capriciously when it assessed Moulded's improvement with two PARs for the 1990-93 tax years. Moulded argues that pursuant to the State Board's rules, its improvement should have been assessed with a single PAR because it is a single improvement with mixed uses. The State Board does

---

**11.** Moulded also raises arguments regarding the walls, partitioning, and interior finish of the light manufacturing area, and the interior finish of the office area, that are identical to the argument it raised regarding its heaters. Specifically, Moulded argues that it was assessed for a component that actually differs from the model's description or is absent from the improvement. As with the heaters, Moulded made no attempt to quantify the costs for any of these additional components. Consequently, Moulded did not carry its burden with regard to these additional components. *See Barth, Inc. v. State Bd. of Tax Comm'rs*, 756 N.E.2d 1124, 1128-29 (Ind. Tax Ct.2001); *Rinker Boat Co. v. State Bd. of Tax Comm'rs*, 722 N.E.2d 919, 922 (Ind. Tax Ct.1999). Accordingly, Moulded is not entitled to relief on these additional issues.

not deny that Moulded's improvement should have been assessed with a single PAR. Rather, it argues that Moulded improperly brought its claim in a 133 Petition because a correction of the PAR would require an assessor's subjective judgment.

A PAR is "the total linear feet in the perimeter of a building divided by the corresponding square foot area and multiplied by 100 to convert to a whole number." [12] IND. ADMIN. CODE tit. 50, r. 2.1–4–1. A single improvement may be assessed with more than one model because the improvement is architecturally or functionally divided into two or more distinct areas. For these "mixed use" improvements, the State Board's rules provide that an assessor should "compute *a* PAR for the [improvement], select the correct square foot price for each [model], and then apply a percentage multiplier based on the actual square footage of each individual section or [model], as compared to the total square footage of the [improvement]." 50 IAC 2.1–4–1 (emphasis added); *see also Wareco*, 689 N.E.2d at 1301.

The State Board's hearing officer testified that the light manufacturing building with its attached office constituted a single improvement with mixed uses. (Trial Tr. at 11, 73.) Accordingly, the State Board assessed the manufacturing area with the GCI Light Manufacturing model and assessed the office area with the GCI Office model. Rather than use a single PAR to assess the entire improvement, however, the State Board used two PARs. Specifically, the State Board assessed the light manufacturing area with a PAR of 2 and the office area with a PAR of 9. Had a single PAR been calculated for the entire improvement, it would have been 2.[13] Because the per-square-foot base cost of an improvement increases as its PAR increases, the PAR of 9 increased the square-foot assessment of the office area over what it would have been with a PAR of 2.[14]

■ The State Board must follow its own rules for assessing real property. *See* I.C. § 6–1.1–15–14; *Castello*, 638 N.E.2d at 1364. The State Board determined that Moulded's office and light manufacturing area constituted a single improvement;

---

12. The PAR corresponds to ten sequentially-numbered columns in Schedule A, which in turn correspond to various base prices associated with each model. 50 IAC 2.1–4–3(a); 50 IAC 2.1–4–5 (Schedule A). All things being equal, a square building has a lower PAR—and thus, a lower base price—than a rectangular building with the same floor area. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–1 (1992). Consequently, the PAR encourages economies of scale and the efficient use of space. *See Wareco Enterprises, Inc. v. State Bd. of Tax Comm'rs*, 689 N.E.2d 1299, 1301 (Ind. Tax Ct.1997).

13. Moulded's improvement—including its office—has a perimeter of 1,034 linear feet and an area of 58,650 square feet. The quotient of 1,034 divided by 58,650 is 0.017. The product of 0.017 multiplied by 100 is 1.7, which, when rounded to the nearest whole number, is 2. *See* 50 IAC 2.1–4–1.

14. The same PAR may result in a different initial base prices depending on the model used to assess an improvement. IND. ADMIN. CODE tit. 50, r. 2.1–4–5 (1992) (Schedule A.2). Specifically, a PAR of 2 for the GCI Light Manufacturing model carries an initial base price range of $19.50–$20.60 per square foot. *Id.* A PAR of 2 for the GCI Industrial Office model carries an initial base price range of $34.40–$35.30. *Id.* A PAR of 9 for the GCI Industrial Office model, however, carries an initial base price range of $41.70–$45.85. *Id.* Moulded's office area was assessed with the GCI Office model and given a PAR of 9. A single PAR of 2 would not change the per-square-foot assessment of Moulded's manufacturing area, because it was already assessed with a PAR of 2. On the other hand, because the office area was assessed with the GCI Office model and given a PAR of 9, lowering the PAR to 2 would lower the initial per-square-foot assessment of that area to $34.40–$35.30 per square foot. *See id.*

the State Board's rules provide for one course of action in this instance, i.e., application of a single PAR. 50 IAC 2.1–4–1. Because the State Board's rules provide no option but to apply a single PAR here, applying a single PAR does not require subjective judgment. Moreover, because the State Board did not follow its own rules for calculating the PAR for a single improvement with mixed uses, its refusal to do so was arbitrary and capricious. Accordingly, the Court REVERSES the State Board's final determination, REMANDS this issue to the Indiana Board with instructions to use a single PAR of 2 for the assessment of Moulded's improvement for the 1990–93 tax years.

## IV. Adjustments to Base Price

■ The final issue is whether the assessment of Moulded's improvement should be reduced for the 1994 tax year. Moulded argues that the State Board arbitrarily and capriciously refused to apply a kit building adjustment [15] to the light manufacturing building. It argues in the alternative that the State Board arbitrarily and capriciously refused to adjust the base price of the light manufacturing building for partitioning, walls, and interior finish that either differed from the model description or were absent from the improve-

ment.[16] The State Board maintains that Moulded submitted no evidence to support either of its claims.

■ The taxpayer has the burden of submitting probative evidence in support of its claims. *Thousand Trails,* 757 N.E.2d at 1075. In this instance, Moulded's evidence for both its arguments consisted of an "Assessment Review and Analysis" (Analysis) prepared by Moulded's designated tax representative, M. Drew Miller of Landmark Appraisals, Inc. The entire Analysis is four pages: a cover page that has the petitioner's name and Miller's name on it, a copy of the State Board's notice of the hearing on Moulded's 131 Petition, a page titled "LIST OF CONTENTIONS" that features nothing more than a one sentence conclusion that "[w]e are in agreement with the changes made per the attached record card one by the township assessor [sic]," and finally, a copy of a sample property record card filled out by Miller.[17] (Joint Ex. D.) Neither conclusory statements nor documents unaccompanied by an explanation constitutes probative evidence; therefore, Miller's conclusory statement and the attached property record card, without further explanation, do not constitute probative evidence. *See*

---

**15.** A "kit building adjustment" reduces the assessment of an improvement by 50%. *Componx, Inc. v. Indiana State Bd. of Tax Comm'rs,* 741 N.E.2d 442, 444 (Ind. Tax Ct.2000). The State Board may apply kit building adjustments to certain pre-engineered buildings. *Id.*

**16.** During the State Board hearing on Moulded's 131 Petition, Moulded argued inter alia that its improvement should receive a grade of D–2 and a discount for various component costs. The State Board gave Moulded's improvement a grade of D–2 but declined to discount any of the improvement's component costs. As a result, Moulded's final as-

sessment exceeded the assessment that Moulded believed was fair by approximately $10,000. Moulded admits that it does not care which method is used to assess its improvement as long as its assessment is lowered to $175,870. (*See* Oral Argument Tr. at 4.)

**17.** Miller testified that prior to the State Board hearing on Moulded's 131 Petition, he and the Cleveland Township Assessor reached on agreement that they memorialized in the attached property record card. This alleged agreement was not made part of the State Board's record; the current state of the record is of no consequence.

*Kemp v. State Bd. of Tax Comm'rs,* 726 N.E.2d 395, 401 (Ind. Tax Ct.2000). Because it submitted no probative evidence, Moulded did not present a prima facie case with regard to any of its claims for the 1994 tax year. Accordingly, the Court AFFIRMS the State Board's final determination for the 1994 tax year.

### CONCLUSION

For the foregoing reasons, the Court REVERSES the State Board's final determination of the applicable physical depreciation table for the 1990 tax year and REMANDS the issue to the Indiana Board with instructions to depreciate the light manufacturing area of Moulded's improvement from the thirty-year physical depreciation table for the 1990 tax year. The Court also REVERSES the State Board's calculation of the PAR for the 1990–93 tax years and remands this issue to the Indiana Board with instructions to use a single PAR of 2 for the assessment of Moulded's improvement for the 1990–93 tax years. The Court AFFIRMS the State Board's final determination of the assessment of Moulded's heaters for the 1990–93 tax years and AFFIRMS the State Board's final determination of Moulded's 131 Petition for the 1994 tax year.