STANDARD PLASTIC
CORPORATION,
Petitioner,

v.

DEPARTMENT OF LOCAL GOVERN-
MENT FINANCE,[1] Respondent.

No. 49T10–9606–TA–72.

Tax Court of Indiana.

July 1, 2002.

1. The State Board of Tax Commissioners (State Board) was originally the Respondent in this appeal. However, as of December 31, 2001, the legislature abolished the State Board. P.L. 198–2001, § 119(b)(2). Effective January 1, 2002, the legislature created the Department of Local Government Finance (DLGF), Ind. Code § 6–1.1–30–1.1 (West Supp.2001)(eff. 1–1–02); P.L. 198–2001, § 66, and the Indiana Board of Tax Review (Indiana Board). Ind. Code § 6–1.5–1–3 (West Supp.2001)(eff. 1–1–02); P.L. 198–2001, § 95. Pursuant to Indiana Code § 6–1.5–5–8, the DLGF is substituted for the State Board in appeals from final determinations of the State Board that were issued before January 1, 2002. Ind. Code § 6–1.5–5–8 (West Supp.2001)(eff. 1–1–02); P.L. 198–2001, § 95. Moreover, the law in effect prior to January 1, 2002 applies to these appeals. Ind. Code § 6–1.5–5–8 (West Supp.2001)(eff. 1–1–02); P.L. 198–2001, §§ 95, 117. Although the DLGF has been substituted as the Respondent, this Court will still reference the State Board throughout this opinion.

Paul M. Pittman, Baker Siegel & Page, Indianapolis, IN, Attorney for Petitioner.

Steve Carter, Attorney General of Indiana, Ted J. Holaday, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

The Petitioner, Standard Plastic Corporation (Standard Plastic), appeals the final determination of the State Board of Tax Commissioners (State Board) establishing the assessed value of Standard Plastic's business personal property as of March 1, 1995. Standard Plastic raises various issues, which the Court restates as:

I. Whether the State Board's decision to value Standard Plastic's not-owned special tool molds by using its replacement cost list was supported by substantial evidence;

II. Whether Standard Plastic's barrel and screw assemblies and platens should have been classified as special tools;[2]

III. Whether the value of Standard Plastic's application software was sufficiently reflected on its books and records, thus entitling it to a deduction; and

IV. Whether the State Board arbitrarily and capriciously assessed a 20% undervaluation penalty against Standard Plastic.

For the reasons stated below, the Court AFFIRMS the State Board's final determination on Issues II and III and REMANDS Issues I and IV to the Indiana Board for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Standard Plastic manufactures plastic molded parts and is located in Wells County, Indiana. On the March 1, 1995, assessment date, Standard Plastic possessed some special tools, which consisted of molds owned by customers but used by Standard Plastic to make different types of plastic injected-molded products. Standard Plastic's injection molding machines contain barrel and screw assemblies and platens that deliver melted plastic to the molds and help hold the molds in place. Standard Plastic is able to use different molds without changing the barrel and screw assembly. When Standard Plastic filed its 1995 Business Tangible Personal Property Assessment Return (Form 103), it did not report that it owned or possessed any special tools and thus did not file a Confidential Return of Special Tools (Form 103–T) to disclose that it was in possession of customer-owned special tool molds.[3] Standard Plastic reported that it

---

**2.** Standard Plastic also raises an issue regarding whether the value of its special tools was substantiated on its books and records. Because this Court finds that Standard Plastic's barrel and screw assemblies and platens are not special tools, the Court need not address this issue. *See infra.*

**3.** A person "holding, possessing, or controlling special tools, not owned, is required to furnish a complete listing on Form 103–T (50 IAC 4.2–2–9), of all not owned personal property pursuant to 50 IAC 4.2–2–5." IND. ADMIN. CODE tit. 50, r. 4.2–6–2(c) (1996). *See also* IND. ADMIN. CODE tit. 50, r. 4.2–6–2(d)(2) (1996).

had business personal property with an assessed value of $99,590.

On September 20, 1995, a State Board field auditor conducted a hearing and audit of Standard Plastic's business personal property tax return. During the audit, the field auditor found that Standard Plastic had failed to report special tool molds in its possession when it filed its Form 103. Standard Plastic gave the auditor a list, which showed that the replacement cost of the molds was $2,725,703. The field auditor requested a list containing an estimate of the original cost of the molds, and Standard Plastic submitted a second list with an estimated original cost of $355,950. The field auditor and her supervisor rejected Standard Plastic's estimated original cost list and ultimately decided that the assessment recommendation for these not-owned special tools would be based on Standard Plastic's replacement cost list.

On January 30, 1996, the field examiner issued her recommendation for the 1995 assessment of Standard Plastic's personal property, which increased Standard Plastic's total assessed value from $99,590 to $139,180. The auditor also recommended that Standard Plastic receive a 20% penalty with respect to $39,590 of the assessed value.

Standard Plastic objected to the field auditor's assessment recommendation and requested an administrative hearing before the State Board. The State Board held a hearing on March 14, 1996, wherein Standard Plastic's tax representative, True Tax Management, presented testimony and exhibits.[4] Standard Plastic argued, among other things, that: (1) the not-owned special tool molds in its possession should have been assessed according to the estimated original cost; (2) its barrel and

screw assemblies and platens should have been classified and assessed as special tools; and (3) it should have received a deduction for application software because application software value was sufficiently reflected on its books and records.

On May 9, 1996, the State Board issued its final determination. The State Board concluded that the assessment of Standard Plastic's not-owned molds would be based on the values contained in Standard Plastic's first submitted list, which was based on replacement cost, because it found that the second list was not credible evidence. The State Board also concluded that Standard Plastic's barrel and screw assemblies and platens did not meet the definition of special tools and were not entitled to a deduction. Finally, the State Board found that Standard Plastic was not entitled to a deduction for its application software because it had not proven that the value of the application software was recorded on its books and records. The State Board assessed Standard Plastic's business personal property at $137,880 and assessed a 20% penalty with respect to $38,290 of the assessed value that resulted from Standard Plastic's undervaluation.

Standard Plastic filed an original tax appeal on June 21, 1996. This Court conducted a trial and heard oral arguments. Additional facts will be supplied as needed.

## ANALYSIS AND OPINION

### Standard of Review

 The Court gives great deference to the State Board's final determinations when the State Board acts within the scope of its authority. *Wetzel Enters., Inc. v. State Bd. of Tax Comm'rs*, 694

---

4. The State Board allowed Standard Plastic to submit additional evidence one week after the administrative hearing.

N.E.2d 1259, 1261 (Ind.Tax Ct.1998). Accordingly, this Court reverses final determinations of the State Board only when those decisions are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.*

■ The taxpayer bears the burden of demonstrating the invalidity of the State Board's final determination. *Clark v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1230, 1233 (Ind.Tax Ct.1998). The taxpayer must present a prima facie case, i.e., a case in which the evidence is "sufficient to establish a given fact and which if not contradicted will remain sufficient." *GTE North Inc. v. State Bd. of Tax Comm'rs,* 634 N.E.2d 882, 887 (Ind.Tax Ct.1994) (citations and internal quotation marks omitted). To establish a prima facie case, the taxpayer must offer probative evidence concerning the alleged error. *Miller Structures, Inc. v. Indiana State Bd. of Tax Comm'rs,* 748 N.E.2d 943, 947 (Ind. Tax Ct.2001). "Once the taxpayer carries the burden of establishing a prima facie case, the burden shifts to the State Board to rebut the taxpayer's evidence and justify its decision with substantial evidence." *Clark,* 694 N.E.2d at 1233. To carry its burden, the State Board must do more than merely assert that it assessed the property correctly. *Loveless Const. Co. v. State Bd. of Tax Comm'rs,* 695 N.E.2d 1045, 1049 (Ind.Tax Ct.1998), *review denied.* Instead, the State Board must offer an authoritative explanation of its decision to rebut the taxpayer's prima facie showing. *Id.*

## Discussion

### I. Not–Owned Special Tool Molds

■ Standard Plastic argues that the State Board's final determination regarding the valuation of its not-owned special tool molds was not supported by substantial evidence. Specifically, Standard Plastic contends that the State Board's own regulation requires that the original cost be used if available and that the State Board's refusal to use Standard Plastic's list of estimated original cost of the special tool molds was arbitrary and capricious. The State Board agrees that valuation of special tools should be based upon original cost but contends that Standard Plastic did not present credible evidence of the original cost. The State Board argues that its final determination is based on substantial evidence because it based the assessment on the most credible information available, which happened to be Standard Plastic's replacement cost list.

■ In Indiana, the personal property tax system is a self-assessment system, which relies primarily upon full disclosure and accurate reporting by the taxpayer. *Dav–Con, Inc. v. State Bd. of Tax Comm'rs,* 644 N.E.2d 192, 195 (Ind.Tax Ct.1994). "In completing a personal property return for a year, a taxpayer shall make a complete disclosure of all information, required by the state board of tax commissioners, that is related to the value, nature, or location of personal property[.]" IND. CODE § 6–1.1–3–9 (West 2000). The taxpayer is responsible for reporting personal property on his personal property tax return form for assessment and taxation. IND. ADMIN. CODE tit. 50, r. 4.2–2–5 (1996). Special tools, whether or not owned by a taxpayer, must be reported on a Form 103–T and attached to a taxpayer's business personal property return. IND. ADMIN. CODE tit. 50, rr. 4.2–6–2(c), (d)(1), (d)(2) (1996). The State Board's regulation sets forth how it must assess special tools that the taxpayer does not own:

The total value of special tools not owned by the taxpayer must be based on the original cost to the owner of such

special tools, if available. If the original cost to the owner is not available, the value shall be based upon the best information available[.]

50 IAC 4.2–6–2(d)(2).

Although Standard Plastic originally failed to report its possession of not-owned special tool molds on its Form 103, it did later provide evidence of the estimated original cost for these not-owned special tools to the State Board. When the field auditor realized that Standard Plastic had not reported possession of the special tool molds, she requested the names of the owners and the cost of each mold. Standard Plastic initially provided the auditor with a list showing the replacement cost of the molds as $2,725,703. The State Board field auditor originally rejected Standard Plastic's replacement cost list as too high and instructed Standard Plastic that it could use an estimate of the original cost. Standard Plastic submitted a second list estimating the original cost at $355,950. Standard Plastic presented both of these lists to the State Board. (Pet'r Exs. 3 & 4.) Standard Plastic also submitted evidence to show that the difference between the two lists was because of the replacement versus original cost and because of the relative age of the molds. (Pet'r Ex. 5.) Specifically, many of the molds were fifty years old, while others were twenty to thirty-five years old. Because Standard Plastic did not know the original cost to the owners, it instead provided a list with the estimated original cost. Thus, Standard Plastic provided the State Board with the best information available regarding the original cost. Therefore, the evidence Standard Plastic submitted was sufficient to meet its initial burden of proof.

■ The Court agrees with Standard Plastic that the State Board did not support its valuation of Standard Plastic's not-owned special tools with substantial evidence. "The State Board's determination is supported with substantial evidence if a reasonable person could view the record in its entirety and find enough relevant evidence to support the State Board's determination." *Amax Inc. Through Amax Coal Co. v. State Bd. of Tax Comm'rs*, 552 N.E.2d 850, 852 (Ind.Tax Ct.1990). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dav–Con*, 644 N.E.2d at 196 (citing *South Shore Marina, Inc. v. State Bd. of Tax Comm'rs*, 527 N.E.2d 738, 742 (Ind.Tax Ct.1988), *aff'd* 543 N.E.2d 644 (Ind.1989) (internal quotation marks omitted)).

The State Board rejected Standard Plastic's estimated original cost list and instead used Standard Plastic's replacement cost list after finding that this list was "not unreasonable" and was the "most credible" evidence. (Pet'r Ex. 1 at 6.) However, the State Board's regulation requires that it use information regarding the original cost or the best information thereof when assessing not-owned special tools.

The State Board's regulation is clear. The State Board must assess not-owned special tools by using the original cost to the owner. 50 IAC 4.2–6–2(d)(2). If that original cost to the owner is not available, then the best information available must be used. *Id.* The plain language of the regulation shows that the "best information available" is in reference to the original cost. *Id.* Additionally, the regulation is unambiguous in that it does not make any reference to using replacement costs in determining the assessed value of the not-owned special tools. *See Id. See also Ispat Inland, Inc. v. State Bd. of Tax Comm'rs*, 757 N.E.2d 1078, 1085 (Ind.Tax Ct.2001) (discussing statutory construction maxim *expressio unius est exclusio alteri-*

*us,* which means the enumeration of certain things in a statute implies the exclusion of all others). The record, however, shows that the State Board determined the assessed value of the not-owned special tools by relying on replacement cost. Because the State Board's use of Standard Plastic's replacement cost list is contrary to its regulation, its final determination regarding the assessed value of Standard Plastic's not-owned special tools is not supported by substantial evidence and is arbitrary and capricious. *See Damico v. State Bd. of Tax Comm'rs,* 769 N.E.2d 715, 719–20 (Ind.Tax Ct.2002) (State Board is required to follow its own regulations). Accordingly, this Court REMANDS this issue to the Indiana Board with instructions to use the estimated original cost list provided by Standard Plastic.

## II. Barrel and Screw Assemblies and Platens

■ Standard Plastic argues that its barrel and screw assemblies and platens are special tools in accordance with the State Board's regulation, Indiana Administrative Code title 50, regulation 4.2–6–2(b). The State Board contends that the barrel and screw assemblies and platens did not qualify as special tools because they did not meet the plain meaning of the regulation's definition of special tools.

The State Board's regulations define special tools as:

> "Special tools" includes, but is not limited to, tools, dies, jigs, fixtures, gauges, molds, and patterns acquired or made for the production of products or product models which are of such specialized nature that their utility generally ceases with the modification or discontinuance of such products or product models.

IND. ADMIN. CODE tit. 50, r. 4.2–6–2(b) (1996). The owner of special tools is required to report any special tools on a Form 103–T as an attachment to his business personal property tax return. 50 IAC 4.2–6–2(c). To satisfy its burden, Standard Plastic needed to show that its barrel and screw assemblies and platens were of such specialized nature that their utility generally ceases with the modification or discontinuance of various molds. *See* 50 IAC 4.2–6–2(b).

In its evidence presented to the State Board, Standard Plastic failed to show that the barrel and screw assemblies and platens meet the definition of special tools. Standard Plastic presented evidence that it was not necessary to use different barrel and screw assemblies and platens in its injection molding operation. (Pet'r Ex. 7.) Standard Plastic's tax representative presented a list from NewCastle Industries of different barrel and screw assemblies with a description of potential applications for each. (Pet'r Ex. 7 at 2.) Standard Plastic, however, did not present any explanation of how that list applied to it. Standard Plastic did not provide any evidence that it even used these various barrel and screw assemblies contained on the list. Standard Plastic's mere reference to a list of barrel and screw assemblies, without explanation, does not qualify as probative evidence. *See Heart City Chrysler v. State Bd. of Tax Comm'rs,* 714 N.E.2d 329, 333 (Ind. Tax Ct.1999) (unexplained photographs do not qualify as probative evidence); *North Park Cinemas v. State Bd. of Tax Comm'rs,* 689 N.E.2d 765, 769 (Ind.Tax Ct.1997) (a taxpayer has an "obvious responsibility to appear before the State Board and present evidence and argument in support of its position.").

Standard Plastic also submitted a copy of a fax that its tax representative sent to Mike Caudill at Cincinnati Milacron.[5] (Pet'r Ex. 8.) The fax stated:

5. Cincinnati Milacron manufactured some of

the injection molding machines which Stan-

[W]e talked about the Cincinnati Milacron equipment owned by Standard Plastics Corporation. We talked about the stationary and moving platens, and the screw and barrel assembly. I would like clarification regarding the above described components. Would an owner of your equipment use a different platen, screw and/or barrel based on processing a different product. [sic] Specifically, if a different type of raw material (plastic) was used, could a different platen, screw and/or barrel be recommended to produce the best product. [sic]

(Pet'r Ex. 8.) The fax contained the initials "M.C." handwritten on the bottom of the page. (Pet'r Ex. 8.)

■ Standard Plastic's tax representative simply concluded that this fax is evidence of Mike Caudill's belief that Standard Plastic's screw and barrel assemblies and platens qualify as special tools. Even assuming "M.C." constituted an affirmation of the contents of the fax, the fax was merely conclusory. Conclusory statements do not constitute probative evidence. *Kemp v. State Bd. of Tax Comm'rs*, 726 N.E.2d 395, 400 (Ind.Tax Ct.2000). Moreover, this fax does not even contain a definitive statement or opinion that the barrel and screw assemblies and platens are of such specialized nature that their utility generally ceases with the modification or discontinuance of various molds. Therefore, this Court does not find it to be probative evidence. *CDI, Inc. v. State Bd. of Tax Comm'rs*, 725 N.E.2d 1015, 1021 (Ind.Tax Ct.2000) (the Court will not rely upon unsupported opinion).

■ Where a taxpayer fails to provide the State Board with probative evidence supporting its position on special tools, the State Board's duty to support its final determination with substantial evidence is not triggered. *See Kemp*, 726 N.E.2d at 400. Here, Standard Plastic did not come forward with probative evidence showing that its barrel and screw assemblies and platens qualified as special tools. Thus, the State Board had no duty to refute Standard Plastic's arguments with substantial evidence. *See CDI*, 725 N.E.2d at 1021. Accordingly, this Court AFFIRMS the State Board's final determination on this issue.

### III. Application Software

■ Standard Plastic argues that the State Board improperly assessed it for the value of application software[6] included in the price of its injection molding machines. The State Board admits that its regulations allow for a deduction of application software for property tax purposes but argues that Standard Plastic was not entitled to the deduction because it did not prove that the value of the application software was recorded on its books and records.

The State Board's regulations provide in pertinent part:

If the value recorded on the books and records reflects charges for customer support services such as . . . application software that relate to future periods and not to the value of the tangible personal property, such charges may be deducted as nonassessable intangible personal property (to the extent that a

---

dard Plastic used. (Trial Tr. at 58, 66.) Mike Caudill is a special project engineer at Cincinnati Milacron. (Trial Tr. at 67.)

**6.** Application software is "a written sequence of instructions which details the operations the equipment is to perform in order to achieve a specific objective of the user." IND. ADMIN. CODE tit. 50, r. 4.2–4–3(g)(3) (1996).

separate charge or value can be identified).

IND. ADMIN. CODE tit. 50, r. 4.2–4–3(g) (1996). Thus, to obtain the deduction for application software, Standard Plastic first needed to show that its application software was recorded on its books and records.

Standard Plastic asserts that the value of the application software was recorded on its books and records "in the form of" its property tax return and on invoices (Pet'r Exs. 9—11) submitted to the State Board. (Oral Argument Tr. at 14.) A review of its tax return and invoices, however, reveals no mention of the value of application software let alone any mention of application software. (*See* Pet'r Exs. 9—11.)

Standard Plastic admits that the invoices did not contain the value of the application software (Pet'r Trial Br. at 18, Trial Tr. at 58.) Instead, Standard Plastic submitted a copy of a fax that its tax representative sent to Mike Caudill at Cincinnati Milacron. (Pet'r Ex. 12.) The fax stated:

> Thank you for taking time to discuss the . . . software components on the Cincinnati Milacron injection molding machines owned by Standard Plastics Corp. Per our discussion, we identified the . . . application software contained in the control system to be 10% of the total cost of the machine. The machines included in our conversation were the T–75–8, T–150–14, T–200–14, and 200 Ton oz pc–3. Please initial and fax this notice back to confirm our conversation[.]

(Pet'r Ex. 12.) The fax contained the initials "M.C." handwritten on the bottom of the page. (Pet'r Ex. 12.)

The State Board rejected Standard Plastic's fax as evidence that established that the value of its application software was contained in its books and records.

This Court agrees that the fax is not probative evidence to meet the requirement of the regulation that the value of the application software be recorded on Standard Plastic's books and records. *See* 50 IAC 4.2–4–3(g). Unless the value is recorded on the books and records, it is irrelevant what anyone discussed. Therefore, Standard Plastic has not met its burden of establishing a prima facie case. Accordingly, this Court AFFIRMS the State Board's final determination on this issue.

## IV. Penalty

Standard Plastic argues that the State Board erroneously assessed a penalty against it because the State Board's determinations were incorrect. The State Board contends that its determinations, and thus the assessed penalties against Standard Plastic, were correct and should be sustained.

A taxpayer must report personal property for assessment and taxation on its personal property tax form. 50 IAC 4.2–2–5. If a taxpayer undervalues its property on a personal property tax return by more than 5%, the taxpayer may, pursuant to Indiana Code § 6–1.1–37–7(e), be penalized 20% "of the additional taxes finally determined to be due as a result of the undervaluation." IND. CODE § 6–1.1–37–7(e) (2000). "The penalty is mandatory and offers no opportunity for discretion when the facts meet the requirements of the statute." *Dav–Con,* 644 N.E.2d at 197 (citing *Gulf Stream Coach Inc. v. State Bd. of Tax Comm'rs,* 519 N.E.2d 238, 243 (Ind. Tax Ct.1988) (internal quotation marks omitted)).

On its personal property tax return, Standard Plastic reported that it had personal property with an assessed value of $99,590. Standard Plastic did not, however, report for assessment the not-owned special tool molds that it had in its posses-

sion. By reporting less than the total assessed value that it was required by law to report, Standard Plastic undervalued its personal property subject to assessment. The issue of the not-owned special tool molds has been remanded to the Indiana Board for a proper valuation. *See supra,* Issue I. Until the Indiana Board reaches a proper valuation on these not-owned special tools, the amount of the penalty cannot be finally determined. If the amount of that undervaluation exceeds 5% of the proper amount, Standard Plastic is liable for a 20% penalty. *See* I.C. § 6–1.1–37–7(e). Therefore, the Court REMANDS the penalty issue to the Indiana Board.

## CONCLUSION

For the aforementioned reasons, the Court AFFIRMS the State Board's final determinations on Issues II and III and REMANDS Issue I and IV to the Indiana Board for further proceedings consistent with this opinion.