**AUTOLIV NORTH AMERICA,**
Petitioner,

v.

**DEPARTMENT OF LOCAL GOVERN-
MENT FINANCE,[1] Respondent.**

**No. 49T10–9710–TA–188.**

Tax Court of Indiana.

March 6, 2003.

---

1. The State Board of Tax Commissioners (State Board) was originally the Respondent in this appeal. However, the Legislature abolished the State Board as of December 31, 2001. 2001 Ind. Acts 198 § 119(b)(2). Effective January 1, 2002, the Legislature created the Department of Local Government Finance (DLGF) and the Indiana Board of Tax Review (Indiana Board). IND.CODE §§ 6–1.1–30–1.1; 6–1.5–1–3 (West Supp.2001) (eff.2002); 2001 Ind. Acts 198 §§ 66, 95. Pursuant to Indiana Code § 6–1.5–5–8, the DLGF is substituted for the State Board in appeals from final determinations of the State Board that were issued before January 1, 2002. IND.CODE § 6–1.5–5–8 (West Supp.2001) (eff. 2002); 2001 Ind. Acts 198 § 95. Nevertheless, the law in effect prior to January 1, 2002 applies to these appeals. I.C. § 6–1.5–5–8. *See also* 2001 Ind. Acts 198 § 117. Although the DLGF has been substituted as the Respondent, this Court will still reference the State Board throughout this opinion.

☞485(3)

Paul Pittman, Baker Pittman Page, David Pippen, Indianapolis, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Linda Villegas, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Autoliv North America (Autoliv) appeals the final determination of the State Board of Tax Commissioners (State Board) valuing its business personal property for the 1996 assessment. The Court finds that the dispositive issues in this case are:

I. Whether the State Board properly denied Autoliv's deduction for special tools;[2] and

II. Whether the State Board properly denied Autoliv's deduction for application software.

For the reasons stated below, the Court AFFIRMS the State Board's final determination.

---

**2.** Typically, a taxpayer seeking to deduct the cost of special tools must first prove that its tools satisfy the State Board's definition of special tools. *See Standard Plastic Corp. v. Dep't of Local Gov't Fin.*, 773 N.E.2d 379, 385 (Ind. Tax Ct.2002). However, given the Court's holding in this case, it need not address the issue. Instead, it assumes without deciding that Autoliv's tools are "special tools."

## FACTS AND PROCEDURAL HISTORY

Autoliv, located in Marion County, Indiana, manufactures locking wheels for seatbelt assemblies. To manufacture the locking wheels, Autoliv uses three interrelated tools (the tools) that are run by application software: a track-fed vibratory bowl, a picking station, and a storage pallet. First, the track component feeds locking wheels into the vibratory bowl. Next, the picking station removes the locking wheels from the bowl. The picking station then places the locking wheels on a pallet that has been specially designed to hold nested locking wheels securely in place. The tools are all specifically designed to manufacture and accommodate locking wheels of one size only.

For the March 1, 1996 assessment date, Autoliv filed its Business Tangible Personal Property Return, in which it claimed that its tools were "special tools." Autoliv deducted both the cost of the tools and the application software from the total assessed value of its business personal property. As a result, Autoliv reported a total assessed value of $2,094,650.

On January 14, 1997, a State Board field auditor audited Autoliv's property tax return and concluded that Autoliv's tools were not "special tools" and that Autoliv was not entitled to deduct either the cost of the tools or the cost of its application software. The auditor recommended that the State Board increase Autoliv's total assessed value by $427,030. The auditor also recommended that an underassessment penalty of twenty percent be levied against the taxes due on the $427,030.[3]

Autoliv requested a hearing on the assessment, which was held on August 13, 1997. On September 24, 1997, the State Board issued a final determination in which it affirmed the assessment. Specifically, the State Board determined that because Autoliv had not shown with probative evidence the cost of its tools and application software, it was not entitled to deduct them from the total assessed value of its business personal property.

On October 31, 1997, Autoliv initiated an original tax appeal. On June 18, 1999, this Court conducted a trial. On August 18, 2000, the parties presented oral arguments. Additional facts will be supplied as needed.

## ANALYSIS AND OPINION

### Standard of Review

▪ The Court gives great deference to the State Board's final determinations when it acts within the scope of its authority. *Standard Plastic Corp. v. Dep't of Local Gov't Fin.,* 773 N.E.2d 379, 382 (Ind. Tax Ct.2002). Accordingly, this Court reverses final determinations of the State Board only when those decisions are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.* at 383.

▪ The taxpayer bears the burden of demonstrating the invalidity of the State Board's final determination. *Id.* To do so, the taxpayer must present a prima facie case by submitting probative evidence, i.e.,

---

3.    If the total assessed value that a person reports on a personal property return is less than the total assessed value that the person is required by law to report and if the amount of the undervaluation exceeds five percent (5%) of the value that should have been reported on the return, then the coun-

ty auditor shall add a penalty of twenty percent (20%) of the additional taxes finally determined to be due as a result of the undervaluation.
IND. ADMIN. CODE tit. 50, r. 4.2–2–10(d) (1996).

evidence sufficient to establish a given fact that, if not contradicted, will remain sufficient. *Damico v. Dep't of Local Gov't Fin.*, 769 N.E.2d 715, 719 (Ind. Tax Ct.2002). Once the taxpayer presents a prima facie case, the burden shifts to the State Board to rebut the taxpayer's evidence and support its findings with substantial evidence. *Id.*

## Discussion

### I. Special Tools

Autoliv first challenges the State Board's final determination regarding the valuation of its special tools.[4] Specifically, Autoliv contends that it submitted to the State Board estimated costs of the special tools and the State Board arbitrarily ignored them. The State Board, on the other hand, argues that Autoliv's evidence was not probative of the total cost of producing or acquiring the special tools as required by its rules. The State Board is correct.

Indiana's personal property tax system "is a self-assessment system, which relies primarily upon full disclosure and accurate reporting by the taxpayer." *Standard Plastic*, 773 N.E.2d at 383. "In completing a personal property return for a year, a taxpayer shall make a complete disclosure of all information, required by the state board of tax commissioners, that is related to the value, nature, or location of personal property[.]" IND.CODE § 6–1.1–3–9 (1998). The taxpayer is responsible for reporting personal property on its personal property tax return for assessment and taxation. IND. ADMIN. CODE tit. 50, r. 4.2–2–5 (1996). Special tools, whether or not owned by the taxpayer, must be reported on a Form 103–T and attached to the taxpayer's business personal property tax return. IND. ADMIN. CODE tit. 50, rr. 4.2–6–2(c); 4.2–6–2(d)(1); 4.2–6–2(d)(2) (1996). The State Board's rules provide the method for assessing special tools owned by a taxpayer: "The *total cost* of producing or acquiring special tools regardless of the nature, whether capitalized or expensed, must be reported on Form 103–T (50 IAC 4.2–2–9), and attached to Form 103 (50 IAC 4.2–2–9)." 50 IAC 4.2–6–2(d)(1) (emphasis added).

At the State Board hearing, Autoliv submitted a copy of a letter from Jack Reismiller, Autoliv's Manager of Manufacturing, as evidence of the cost of its special tools.[5] In the letter, Reismiller provided an opinion as to the projected and estimated costs of Autoliv's special tools, which Reismiller stated were "based on [his] experience and training as an engineer." (Pet'r Exs. 4 at 2.) However, the State Board's rule plainly requires a taxpayer to report the "total cost" of producing or acquiring special tools, not estimates or projections. *See* 50 IAC 4.2–6–2(d)(1). Because Reismiller's estimated and projected costs of Autoliv's special tools did not comply with the State Board's rule, it was not probative evidence. Accordingly, the Court AFFIRMS the State Board's final determination on this issue.

---

4. The State Board defines "special tools" as "tools, dies, jigs, fixtures, gauges, molds, and patterns acquired or made for the production of products or product models which are of such specialized nature that their utility generally ceases with the modification or discontinuance of such products or product models." IND. ADMIN. CODE tit. 50, r. 4.2–6–2(b) (1996).

5. The letter was addressed to Autoliv's tax representative, Dale Armbruster of True Tax Management Corporation and was dated the day before Autoliv's hearing before the State Board.

## II. Application Software

Autoliv next challenges the State Board's final determination regarding the valuation of its application software.[6] Specifically, Autoliv contends that it submitted the approximate cost of its application software to the State Board, which arbitrarily ignored it. The State Board, on the other hand, argues that Autoliv's evidence was not probative of the actual acquisition cost of its software. Again, the State Board is correct.

The State Board's rules require a taxpayer to record the actual cost of its application software as a separate item on its books and records. *Standard Plastic,* 773 N.E.2d at 387 (citing IND. ADMIN. CODE tit. 50, r. 4.2–4–3(g) (1996)). Autoliv submitted a letter from an Autoliv France employee in which he provided certain "approximate" software costs. (Pet'r Ex. 4 at 8.) However, it is irrelevant what anyone says the cost of Autoliv's software is, because the State Board's rule on valuing application software unambiguously required Autoliv to record the *actual* acquisition cost of its software, not an approximate cost. *See* IND. ADMIN. CODE tit. 50, r. 4.2–4–3(f) (1996); *Standard Plastic,* 773 N.E.2d at 387. Because Autoliv did not show that it had recorded the actual acquisition cost of its application software as a separate item on its books and records, its attempt to deduct that cost must fail. *See Standard Plastic,* 773 N.E.2d at 387. Accordingly, the Court AFFIRMS the State Board's final determination on this issue.[7]

## CONCLUSION

Because Autoliv did not submit probative evidence in support of its contentions, it is not entitled to deduct the costs of its special tools and application software. Therefore, the Court AFFIRMS the State Board's final determination.

---

6. The State Board's rules define application software as "a written sequence of instructions which details the operations the equipment is to perform in order to achieve a specific objective of the user." IND. ADMIN. CODE tit. 50, r. 4.2–4–3(g)(3) (1996).

7. Autoliv argues that it should not be assessed a twenty percent undervaluation penalty because it complied with all the requirements for claiming an exemption for special tools and application software. (Pet'r Trial Br. at 12–13.) However, compliance with the State Board's requirements must be based on facts, not opinions or estimates. *See* IND. ADMIN. CODE tit. 50, rr. 4.2–6–2(d)(1); 4.2–4–3(f) (1996); *Standard Plastic,* 773 N.E.2d at 387. Because Autoliv has submitted opinions and estimates instead of facts, the Court will not address Autoliv's contention regarding its penalty.